## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

| | | |
|---|---|---|
| Fr. BERNARD PAUL CHAMPAGNE | : | Case No. 3:20-cv-00674 (AVC) |
|     Plaintiff, | : | |
| | : | |
| *v*. | : | |
| | : | |
| DR. AMIR MOHAMMAD, *in his official* | : | ***Jury Trial Demanded*** |
| *capacity as the* TOWN OF ORANGE | : | |
| DIRECTOR OF HEALTH | : | |
|     Defendant. | : | |
| _____ | : | Date:  June 19, 2020 |

### PLAINTIFF'S SECOND AMENDED COMPLAINT FOR
### DECLARATORY RELIEF,  INJUNCTIVE RELIEF, AND DAMAGES

### THE PARTIES

1. Father Bernard Paul Champagne ("Father Bernard") is 87 years old. He has been an ordained priest for almost five decades. For the past sixteen years, Father Bernard has led a small congregation at the Our Lady of Sorrows Church, which is located at 378 Spring Street, Orange, Connecticut, where he resides (the "Church").

2. Defendant Dr. Amir Mohammad is the Director of Health for the Town of Orange Health Department, which is located at 617 Orange Center Road, Orange, Connecticut. He is sued in his official capacity as the Director of Health for the Town of Orange.

### JURISDICTION AND VENUE

3. This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983 in relation to Defendant's depriving Father Bernard of his constitutional rights.

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this is a civil rights action that arises under the Constitution of the United States.

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2). This Court is authorized to grant the requested declaratory and injunctive relief under 28 U.S.C. §§ 2201-02 and § 1343(a), respectively.

6. This Court is authorized to grant Father Bernard's request for attorneys' fees and costs under 42 U.S.C. § 1988.

## FACTUAL ALLEGATIONS

7. On March 12, 2020, in response to the COVID-19 pandemic, Governor Lamont, issued Executive Order No. 7 that, among other things, prohibits social gatherings of 250 people or more. This order provides, though, that "nothing [herein] shall prohibit any spiritual gathering or worship service." A true and correct copy of this order is attached as Ex. A.

8. Several days later, Governor Lamont issued Executive Order No. 7D that, among other things, amends Executive Order No. 7 by prohibiting social gatherings of 50 people or more. This order expressly allowed "religious, spiritual or worship gatherings" subject to the 50-person limitation. A true and correct copy of this order is attached as Ex. B.

9. On March 16, 2020, Defendant Dr. Amir Mohammad, in his role and capacity as the Town of Orange's Public Health Director, issued and published a Directive entitled "Decisions Regarding Cancellation of Congregational Prayers and Religious Events in Town of Orange due to Coronavirus (COVID-19) Pandemic" (the "Directive"). A true and correct copy of the Directive is attached as Ex. C.

10. Defendant acted under the color of state law when he published the Directive. The Directive arbitrarily announces that "all devotional or religious acts such as daily and weekly congregational prayers, and other religious gatherings shall be canceled until further notice." (emphasis in original). It explains that these measures are necessary "to

2

limit community transmission of Coronavirus pandemic through people contact and large gatherings at these religious buildings located in the town of Orange."

11. The Directive neither accounts for nor allows any safety measures taken by religious institutions to mitigate the spread of Covid-19, such as social distancing, hand sanitizing, and compliance with the limitations imposed by Executive Order No. 7D.

12. Despite its purported objective to limit virus transmission, the Directive singles-out religious gatherings because it does not apply to non-religious or secular gatherings. In fact, since the State of Connecticut declared a public health and civil preparedness emergency on March 10, 2020, the Town of Orange has not, upon information and belief, prohibited <u>any</u> secular gatherings that would otherwise be lawful under Governor Lamont's Executive Orders. Many retail establishments, for example, have remained open, freely facilitating public gatherings, subject to the Governor's Executive Orders.

13. To date, despite the upheaval caused by the Covid-19 pandemic, Governor Lamont has never sought to prohibit religious gatherings. Indeed, on March 26, 2020, he issued Executive Order No. 7N, which, among other things, modified Executive Order No. 7D to prohibit social and recreational gatherings exceeding 6 people. Tellingly, though, Executive Order No. 7N <u>exempts</u> "religious, spiritual or worship gatherings" from these more restrictive limitations. A true and correct copy of this order is attached as Ex. D.

### Defendant's Explicit and Intentional Discrimination
### Toward Religious Exercise, Speech, and Assembly

14. In April 2020, Defendant caused the Town of Orange Police Department (the "Police Dept.") to enforce the Directive against Father Bernard and the Church. During a phone call between the Police Dept. and Father Bernard, the Police Dept.—citing the Directive— ordered Father Bernard to immediately close the Church and ban public admission until

3

further notice. The practical implication of the Directive, and this phone call from the Police Dept., was that Father Bernard could not—under any circumstances—perform in-person religious services for his congregants, such as last rites, confession, and daily communion.

15. Father Bernard perceived the Police Dept.'s instruction, that he must immediately close the Church and ban public admission until further notice, as having been conveyed with a hostile, menacing tone. He thus developed an actual and well-founded fear that he was threatened with being arrested and prosecuted if he did not comply with the Directive. This afflicted Father Bernard with a sense of helplessness and emotional torment.

16. The Directive purposefully and without justification singles-out religious institutions and subjects them to a discriminatory scheme that cannot pass constitutional muster under any set of facts. This action thus presents a facial and as-applied challenge to the Directive.

## Defendant's Unlawful Directive Deprived Father
## Bernard of Privileges under the United States Constitution

17. Father Bernard's vocation was settled from an early age. For seven decades, Father Bernard has devoted his life to serving the catholic church and espousing the word of God. After graduating from high school, Father Bernard pursued monasticism for over a decade where he immersed himself in the teachings of traditional Catholicism and religious scripture.

18. After obtaining priesthood, Father Bernard moved to Orange, Connecticut, around sixteen years ago, and agreed to serve as the Church's priest. Since then, Father Bernard has served a consistent and committed congregation who have become accustomed to—and at times, dependent on—his unique religious counsel and services. Father Bernard champions traditional catholic values. He conducts his religious services in Latin and provides congregants with tireless commitment and energy. He offers comfort and healing during

4

times of hardship and elation during times of rejoice. Father Bernard believes that his priesthood imbues him with a duty to serve his congregation and facilitate their journey toward God.

19. The Directive forced Father Bernard to abandon his congregation and the catholic church's foundational precept of collective worship. Indeed, because the Directive proscribes all "religious gatherings" and "[r]eligious [e]vents," Father Bernard could not even perform in-person religious services <u>away</u> from the Church, anywhere in the Town of Orange. Defendant ensured that the Directive cut-off all religious activity. Yet remarkably, the Directive did not curtail any secular or non-religious activity. This double-standard is antithesis to religious freedom and strikes at the heart of the First and Fourteenth Amendments to the United States Constitution.

20. On or around May 20, 2020, Defendant issued a revised Directive that "religious institutions and house[s] of worship" could resume gatherings of 50 people or less (the "Revised Directive"). Even so, this about-turn does not remedy the past harm and injury occasioned to Father Bernard, and does not provide any measure of certainty that Defendant will not again—under the guise of executive authority—disparately and discriminatorily outlaw religion and religious exercise in the Town of Orange.

21. The hostile religious discrimination caused by the Directive has harmed and injured Father Bernard, and those similarly situated, by preventing and prohibiting him from enjoying, exercising, and fulfilling the vocation, calling, purpose and spirit of his fundamental guiding religious values and core beliefs.

## CLAIMS FOR RELIEF

### Count One – Violation of the First Amendment Freedom of Assembly Clause

22. Father Bernard incorporates all allegations contained in paragraphs 1-21 as if fully set forth herein.

23. Defendant acted under the color of state law when he issued the Directive. The Directive, and Defendant's enforcement thereof, violate the First Amendment, both facially and as-applied to Father Bernard. By denying Father Bernard the ability to conduct religious services—abridging his right to peacefully assemble—Defendant has violated the First Amendment's Freedom of Assembly Clause.

24. Father Bernard has sincerely held religious beliefs including that scripture is the Word of the Lord, that Jesus Christ is his Savior, and that he is to be guided by the Word of the Lord and the teachings of Christ. Father Bernard's sincerely held religious beliefs emanate from the Word of the Lord and from the teachings of Christ that provide for communing in the name of God to petition, to pray, to worship, and to give thanks, petition, supplication, and praise as a community and assemble two or more persons together.

25. These beliefs rooted in Scripture's teachings include the belief that followers of Christ are not to forsake the assembling of themselves together and that the religious believers are to do so even more in times of peril and crisis. In fact, the purpose of the church (in Greek it is "ekklesia" which means "assembly") is to assemble together the devout who are Christians to worship God together.

26. The Directive is unconstitutionally overbroad and invalid both facially and as-applied to Father Bernard. Requiring Father Bernard to abstain from religious gatherings, despite the availability of less-restrictive measures to achieve any purportedly compelling governmental interests, has deprived Father Bernard of rights and privileges under the

6

United States Constitution. Defendant did not undertake the least-restrictive measures to achieve any purportedly compelling governmental interests. Indeed, Governor Lamont's occupancy caps provide appropriate less-restrictive measures that limit the spread of Covid-19.

27. Despite the Revised Directive, Father Bernard has suffered serious and irreparable harm to his rights under the First Amendment to the United States Constitution. And Father Bernard has no adequate remedy at law to prevent such harm in the future  unless Defendant is enjoined from re-issuing and re-implementing the Directive or any similar order. Pursuant to 42 U.S.C. §§ 1983 and 1988, Father Bernard is thus entitled to declaratory relief and permanent injunctive relief.

28. Father Bernard is entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**Count Two – Violation of First Amendment Freedom of Speech**

29. Father Bernard hereby realleges and incorporates each and every allegation contained in paragraphs 1-28 above.

30. Defendant acted under the color of state law when he issued the Directive. The Directive, and Defendant's enforcement thereof, violate the First Amendment, both facially and as-applied to Father Bernard. Father Bernard engages daily in private protected speech under the First Amendment through communal prayer, teaching, and discourse.

31. The Directive is unconstitutionally overbroad and invalid both facially and as-applied to Father Bernard. By banning Father Bernard from exercising speech under the First Amendment, despite the availability of less-restrictive measures to satisfy any purportedly compelling governmental interests, the Directive is substantially overbroad and has deprived Father Bernard of rights and privileges under the United States Constitution.

32. Defendant did not undertake the least-restrictive measures to achieve any purportedly compelling government interest. Indeed, Governor Lamont's occupancy caps provide appropriate less-restrictive measures that limit the spread of Covid-19.

33. Despite the Revised Directive, Father Bernard has suffered serious and irreparable harm to his rights under the First Amendment to the United States Constitution. And Father Bernard has no adequate remedy at law to prevent such harm in the future unless Defendant is enjoined from re-issuing and re-implementing the Directive or any similar order. Pursuant to 42 U.S.C. §§ 1983 and 1988, Father Bernard is thus entitled to declaratory relief and permanent injunctive relief.

34. Father Bernard is entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### Count Three – Violation of First Amendment Free Exercise Clause

35. Father Bernard hereby realleges and incorporates each and every allegation contained in paragraphs 1-34 above.

36. Defendant acted under the color of state law when he issued the Directive. The Directive, and Defendant's enforcement thereof, violate the First Amendment, both facially and as-applied to Father Bernard. The Directive is neither neutral nor of general application. Rather, it specifically and explicitly singles out religious gatherings and imposes a wholesale prohibition on them while comparable secular gatherings and functions are permitted to continue. This disparate treatment sweeps far beyond an incidental effect on religion and unlawfully abridges Father Bernard's right of religious exercise under the United States Constitution.

37. Father Bernard has sincerely held religious beliefs including that scripture is the Word of the Lord, that Jesus Christ is his Savior, and that he is to be guided by the Word of the Lord

8

and the teachings of Christ. Father Bernard's sincerely held religious beliefs emanate from the Word of the Lord and from the teachings of Christ that provide for communing in the name of God to petition, to pray, to worship, and to give thanks, petition, supplication, and praise as a community and assemble two or more persons together.

38. These beliefs rooted in Scripture's teachings include the belief that followers of Christ are not to forsake the assembling of themselves together and that the religious believers are to do so even more in times of peril and crisis. In fact, the purpose of the church (in Greek it is "ekklesia" which means "assembly") is to assemble together the devout who are Christians to worship God together.

39. Defendant did not undertake the least-restrictive measures to achieve any purportedly compelling governmental interests. Indeed, Governor Lamont's occupancy caps provide appropriate less-restrictive measures that limit the spread of Covid-19.

40. Despite the Revised Directive, Father Bernard has suffered serious and irreparable harm to his rights under the First Amendment to the United  States Constitution. And Father Bernard has no adequate remedy at law to prevent such harm in the future  unless Defendant is enjoined from re-issuing and re-implementing the Directive or any similar order. Pursuant to 42 U.S.C. §§ 1983 and 1988, Father Bernard is thus entitled to declaratory relief and permanent injunctive relief.

41. Father Bernard is entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**Count Four – Violation of First Amendment Establishment Clause**

42. The Plaintiff hereby realleges and adopts each and every allegation in paragraphs 1-41 above.

43. Defendant acted under the color of state law when he issued the Directive. The Directive, and Defendant's enforcement thereof, violate the First Amendment, both facially and as-applied to Father Bernard. The Directive advances no secular purpose. Indeed, it specifically and explicitly singles out religious gatherings while secular gatherings are permitted to remain open. Its primary effect inhibits the exercise of religion by preventing Father Bernard and similarly situated individuals from engaging in religious practices. Defendant has failed to avoid excessive government entanglement with religion.

44. This disparate treatment has deprived Father Bernard of his right to be free from sponsorship, financial support, and active involvement of the sovereign in religious activity under the United States Constitution.

45. Despite the Revised Directive, Father Bernard has suffered serious and irreparable harm to his rights under the First Amendment to the United States Constitution. And Father Bernard has no adequate remedy at law to prevent such harm in the future unless Defendant is enjoined from re-issuing and re-implementing the Directive or any similar order. Pursuant to 42 U.S.C. §§ 1983 and 1988, Father Bernard is thus entitled to declaratory relief and permanent injunctive relief.

46. Father Bernard is entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**Count Five – Violation of Equal Protection Clause Under Fourteenth Amendment**

47. Father Bernard hereby realleges and incorporates each and every allegation contained in paragraphs 1-46 above.

48. Defendant acted under the color of state law when he issued the Directive. The Directive, and Defendant's enforcement thereof, violate the Fourteenth Amendment, both facially and as-applied to Father Bernard. Defendant intentionally and arbitrarily treated religious

10

institutions differently than their secular counterparts. This disparate treatment impinged Father Bernard's fundamental rights to practice his faith, exercise private religious speech freely, and assemble peacefully, depriving him of equal protection under the United States Constitution.

49. Defendant did not undertake the least-restrictive measures to achieve any purportedly compelling governmental interests. Indeed, Governor Lamont's occupancy caps provide appropriate less-restrictive measures that limit the spread of Covid-19.

50. Despite the Revised Directive, Father Bernard has suffered serious and irreparable harm to his rights under the First Amendment to the United States Constitution. And Father Bernard has no adequate remedy at law to prevent such harm in the future unless Defendant is enjoined from re-issuing and re-implementing the Directive or any similar order. Pursuant to 42 U.S.C. §§ 1983 and 1988, Father Bernard is thus entitled to declaratory relief and permanent injunctive relief.

51. Father Bernard is entitled to an award of attorney's fees and costs pursuant to 42 U.S.C. § 1988.

**WHEREFORE**, Father Bernard seeks the following relief:

A. An order and judgment declaring that the Directive, facially and as-applied to Father Bernard, violated the First and Fourteenth Amendments to the United States Constitution;

B. An order permanently enjoining and prohibiting Defendant from enforcing the Directive or any similar order against him in the future;

C. Actual and punitive damages pursuant to § 1983;

D. Money damages;

E. Attorney's costs and fees pursuant to 42 U.S.C. § 1988; and

F. Such other relief as this Court deems fair and equitable.

Respectfully submitted,
THE PLAINTIFF

By:  /s/ Marc J. Herman
C. Christian Young, Esq.
Federal Bar No. ct20199
Marc J. Herman, Esq.
Federal Bar No. ct29961
Cohen and Wolf, P.C.
1115 Broad Street
Bridgeport, CT  06604
Tel:  (203) 368-0211
Fax:  (203) 337-5509
Email: cyoung@cohenandwolf.com
Email: mherman@cohenandwolf.com

## CERTIFICATION OF SERVICE

I hereby certify that on the date hereof, a copy of the foregoing was filed electronically.  Notice of the foregoing filing and this Certification of Service will be sent by e-mail to all parties by operation of the Court's electronic filing system and by mail to any parties who are unable to accept electronic filing.  Parties may access the foregoing filings and this Certification of Service through the Court's system.

/s/ Marc J. Herman
Marc J. Herman, Esq.

13